### D. Blume v. J. W. Rice et al.

#### No. 1306.

1. **Power of Attorney—Identifying Subject Matter.**

Where an attorney was authorized to convey for his principal the remaining portion of a named survey, though his deed under such authority described the land thereby conveyed (a part of a conflicting grant) as being a part of the survey named in his power of attorney, it was necessary to show by other evidence than such deed that the land was in fact a part of the survey named in the power of attorney, in order that the conveyance of the principal's title should appear to be authorized by such power.

**Same.**

Answer to the merits by defendant in trespass to try title admits for the purpose of the suit that defendant is in possession of the land described in the petition (Rev. Stats. art 5258), but does not admit that the same is included in the calls of any particular grant, nor dispense with the necessity for such proof.

**Same.**

Neither did evidence which tended to show that the line of the grant named in the power of attorney ran through the land in controversy, but did not show the true locality of such line nor how much of the land in controversy was embraced within it, dispense with such proof.

APPEAL from McLennan. Tried below before Hon. L. W. GOODRICH.

This was a suit of trespass to try title, brought by appellant against appellees, in which, after hearing the evidence, the trial court instructed the jury to return a verdict for defendants. Plaintiff appealed, assigning this instruction as error, and asserting that, as both parties claimed under a common source, the State of Texas, plaintiff had showed title to the land in controversy under a decree of partition in the case of the State of Texas v. Jennie Lewis et al., wherein the title of the State to the land in controversy was divested out of the State and vested in vendors of plaintiff.

That decree was in a suit of trespass to try title, brought by the State, through her Attorney-General, under authority of a joint resolution of the Legislature, approved February 19, 1879, which seems to have arisen from a conflict between certain surveys of university land made for the State and the Joaquin Moreno eleven-league grant. Under the latter

grant the land was claimed by Pablo Jose Martinez Del Rio and heirs of Gregorio Jose Martinez Del Rio, or those claiming under them. The suit resulted in a judgment of partition by which the west half of section 46 of the university lands was set apart to the plaintiff in the present suit, D. Blume, and title therein divested out of the State and vested in said Blume. The statement of facts and briefs of counsel are mostly taken up with the record in that suit and the questions as to its effect in showing title in plaintiff as against defendants who were not parties to the suit. The judgment being affirmed without deciding this question, these matters will be omitted.

Plaintiff, as a part of his chain of title, introduced a power of attorney from Manuel Martinez Del Rio, Nicholas Martinez Del Rio, Ventura Martinez Del Rio, Maria Martinez Del Rio, Angela Martinez Del Rio, Julia Martinez Del Rio, Castiglioni Stampa and her husband, Guiseppe Castiglioni Stampa, acting by and through their attorney in fact, Pablo Martinez Del Rio, and Pablo Martinez Del Rio for himself, to L. J. Farrar, authorizing him to sell, convey, make deeds and receive liens and promissory notes on the remaining portions of the Joaquin Moreno eleven-league grant of land in McLennan County, Texas, same being duly acknowledged November 22, 1891.

Power of attorney from the grantors in the power of attorney to L. J. Farrar, above mentioned, to Pablo Martinez Del Rio, authorizing him to do all, whatever necessary the premises may demand to make deeds, transfers, sales, leases, collections, enter into compromises and sue on the shares or portions that the heirs to G. J. and J. P. Martinez Del Rio, the aforesaid grantors may be entitled to in the property known as the Joaquin Moreno eleven-league grant, situated in McLennan County, Texas, with full power of substitution. Dated October 12, 1888, duly acknowledged and recorded February 14, 1891.

Deed from E. A. Mexia, Manuel Martinez Del Rio, Nicholas Martinez Del Rio, Ventura Martinez Del Rio, Angela Martinez Del Rio, Julia Martinez Del Rio, Pablo Martinez Del Rio, Maria Martinez Del Rio, Castiglioni Stampa, and her husband, Guiseppe Castiglioni Stampa, by their attorney in fact, L. J. Farrar, to D. Blume, for the consideration of $400 cash, and two promissory notes for $346.70 each, conveying the west half of section 46, being quarter sections Nos. 2 and 3, and containing 320 acres of land; said deed recites: "Nine hundred dollars and forty cents of the above described consideration being in full payment and satisfaction of a note of D. Blume, executed April 1, 1873, to E. A. Mexia, agent, in part payment of 300 acres of land conveyed by E. A. Mexia, agent, to D. Blume on April 1, 1873, said 300 acres being imperfectly described in said deed, and the balance of said above stated consideration, to-wit: $120, being in payment of twenty acres of land in addition to 300 acres of land sold by E. A. Mexia to D. Blume, and for the purpose of correcting the imperfect description of the 300 acres of land;" the said land is further described in said deed as a part of the Joaquin Moreno grant and also a part of the university lands in said

county, and a part of the land set apart to the parties to this deed except E. A. Mexia, in the suit of the State of Texas v. Jennie Lewis et al., tried in the District Court of McLennan County, Texas." Said deed dated December 18, 1891, and filed for record in the deed records of McLennan County, January 5, 1892.

The defendant, J. T. Bennett, testified that, as he understood, and as is shown by the county map, the southeast corner of the Joaquin Moreno grant is located in the eighty acres in controversy, claimed by defendant Rice, so that a part of his eighty acres and the larger part of the eighty acres claimed by defendant Rice is not within the boundaries of the Moreno grant.

*Jones & Sleeper,* for appellant.—1. The pleading and judgment in the case of the State of Texas v. Jennie Lewis et al. show that the land therein partitioned was a part of the Joaquin Moreno grant and estop the principals of Farrar to deny that the same was a part of said grant.

2. The location of the line of the Moreno grant was shown by the sketch from the General Land Office, introduced in connection with the petition of plaintiff in the suit by the State, showing that the east line of the Joaquin Moreno grant runs south and north through the west half of section 46 of the university lands, leaving half of the west half of said section outside the boundaries of said grant.

They cited McNamara v. Muensch, 66 Texas, 68; Medlin v. Wilkins, 60 Texas, 409; Black on Judgments, sec. 608; Linney v. Wood, 66 Texas, 22; Stone v. Clark, 35 Am. Dec., 373.

*Pearre & Boynton,* for appellee.—1. The burden is on the plaintiff to show that the land in controversy is covered by his title, and if only a part is so covered, he must show the boundaries of such portion. Scott v. Rhea, 5 Texas, 258; Echols v. McKie, 60 Texas, 41; Cook v. Dennis, 61 Texas, 246; Riley v. Pool, 24 S. W. Rep., 85.

KEY, ASSOCIATE JUSTICE.—Appellant brought this suit to recover 320 acres of land, making J. W. Rice, John T. Bennett and T. J. Newman defendants. The land sued for is described in the plaintiff's petition as follows: "That certain tract or parcel of land, situated in McLennan County, Texas, east of the Brazos River, being a part of the Joaquin Moreno eleven-league grant and also a part of the university land in said county, and being part of the lands allotted and set apart to Manuel Martinez Del Rio and others on the 22d day of April, 1889, by decree of the District Court of McLennan County, Texas, in cause No. 3501, entitled the State of Texas v. Jennie Lewis and others, and said land herein sued for is more particularly described as follows: The west half of section 46 of said university lands, being quarter sections, numbered two and three, and containing 320 acres of land."

Newman disclaimed as to all the land. Rice pleaded a general denial, and disclaimed as to all except the south half of quarter section three of

section forty-six of the university lands in McLennan County, containing eighty acres, as to which he pleaded not guilty, ten years' limitation and a purchase from the State.

Bennett pleaded a general denial and disclaimed as to all the land, except the north half of quarter section two of said section forty-six, containing eighty acres, as to which he pleaded not guilty, a purchase from the State and ten years' limitation. After hearing all the evidence, the trial court directed a verdict for the defendants, which was returned; and upon which judgment was rendered for the plaintiff as to land covered by the disclaimers, and for the defendants Rice and Bennett as to the tracts claimed by them.

There is no conflict in the evidence, most of which is documentary, and is given in the statement of facts about as briefly as can well be done; and therefore we adopt the statement of facts as our conclusions of facts, and refer to the same as such.

*Opinion.*—In the plaintiff's chain of title is a deed from E. A. Mexia and others, acting by L. J. Farrar, their agent and attorney in fact. This deed describes the land conveyed as the west half of section forty-six, being quarter section Nos. two and three of the university lands in McLennan County, and also a part of the Joaquin Moreno eleven-league grant.

The power of attorney under which Farrar acted authorized him "to sell, convey, make deeds and receive liens and promissory notes on the remaining portions of the Joaquin Moreno eleven-league grant of land in McLennan County, Texas."

Under this power of attorney Farrar could sell no land belonging to his principals, unless it was part of the Joaquin Moreno grant. They may have owned the two tracts claimed by Rice and Bennett, but unless said tracts were portions of the Joaquin Moreno grant, Farrar had no power to sell them.

If the rule announced in Echols v. McKie, 60 Texas, 41, and Cook v. Dennis, 61 Texas, 246, is to be adhered to, it would seem that, notwithstanding the fact that the deed executed by Farrar described the land as part of the Joaquin Moreno grant, the burden was on the plaintiff to show by other evidence that it was, in fact, on that grant. On that subject the plaintiff made no proof outside of his muniments of title. It is true that the deed refers to a decree rendered in the case of the State of Texas v. Jennie Lewis and others; but that decree, which was in evidence, and which tends to show that the land in controversy is part of the Moreno grant, is one of his muniments of title. In Echols v. McKie, supra, in discussing that provision of the statutes which makes a plea of not guilty or other answer to the merits, operate as an admission that the defendant is in possession of the land sued for, it is said in the opinion: "By giving that section of the statute the most liberal construction it amounts to no more than this: that an answer to the merits admits, for the purpose of the suit, that the defendant is in possession of the land

described in the plaintiffs' petition. It is no admission whatever that the land thus described and sued for is included in the calls of any particular grant or other muniment of title."

The evidence of the defendants tended to show that the east line of the Moreno grant does run through the land in controversy so as to include part of the tracts claimed by each defendant; but it did not identify the locality of said line by reference to the defendant's lines or to any other object on the ground so that the jury could have fixed its locality. Jones v. Andrews, 72 Texas, 5; Reed v. Cavett, 1 Texas Civ. App., 154.

The controlling calls in the deed executed by Farrar are the west half section forty-six of the university lands. Though not expressly shown to be such, it is perhaps a fair inference that said section forty-six was itself an original grant from the State; and that fact would perhaps be prima facie evidence that said section was not in conflict with any other grant. Such being the case, and there being affirmative proof by the defendants that the Moreno grant does not include all the land in controversy, and said proof not showing how much it does include, we think, as a prerequisite to a recovery, the plaintiff should have shown the true locality of the east line of the Moreno grant.

Farrar's power of attorney did not authorize him to sell the entire Moreno grant, or any designated part thereof; but only "the remaining portions," without giving any data or furnishing any guide by which to determine which parts of the survey were "the remaining portions." Therefore, if it be conceded that the land in controversy is part of the Moreno grant, was Farrar authorized by said power of attorney to sell it? This question is not considered in the briefs of counsel, and, as we affirm the case on other ground, need not be decided by us.

Our conclusion is that no reversible error was committed in directing a verdict for the defendants. There are other questions presented in the briefs which it is unnecessary to decide. The judgment is affirmed.

*Affirmed.*

Delivered December 4, 1895.

Writ of error refused.