HOWELL v. ELLIS et ux. (No. 315.) ·

(Court of Civil Appeals of Texas. Beaumont. Feb. 19, 1918. Rehearing Denied March 20, 1918.)

1. BOUNDARIES ☞6 — SURVEYS — REVERSING COURSES.

The only reason for reversing calls in field notes is to better follow the surveyor's footsteps, and . mere running of lines according to course and distance does not locate the surveyor's footsteps in absence of any marked lines or established· corners, so as to justify application of rule.

2. BOUNDARIES ☞54(6)—SURVEYS—PRESUMPTION OF REGULARITY.

The presumption that a surveyor did not cross a navigable stream in violation of law is one of fact only. ·

3. BOUNDARIES ☞6 — SURVEYS — REVERSING COURSES.

The presumption that a surveyor did not cross a navigable stream in violation of law will not justify reversing courses, where evidence shows that the river by changing its course had crossed the lines, and where· by extending the line the shape of the tract as appeared on the official maps and as described in the original field notes can be practically restored.

4. PUBLIC LANDS ☞175(7) — JUNIOR AND SENIOR PATENTS—BURDEN OF PROOF.

In trespass to try title, where evidence suggests a conflict between two surveys, the burden is upon the party claiming under a junior patent to show that his land did not conflict with that held by the other party under a senior grant; but it is not incumbent upon one· holding under a junior grant well defined and located on the ground ·to locate surrounding grants or uncertain description with certainty before he can recover.

5. BOUNDARIES ☞11—CONTIGUOUS TRACTS—JUDICIAL AUTHORITY TO CHANGE FIELD NOTES.

Where two contiguous tracts are bounded by field notes radically different as to courses and distance, the trial court has no authority to change field notes of the older survey so as to include the younger when no evidence of the footsteps of the original survey could be found; it being the duty of the court in fixing the bounds of a survey to follow the footsteps of the surveyor.

6. BOUNDARIES ☞35(1)—EVIDENCE—SURVEYOR'S INTENTION.

Where footsteps of the surveyor are not found, it is the court's duty to ascertain the surveyor's intention by his field notes and circumstances and conditions surrounding the survey.

Appeal from District Court, Jasper County; W. R. Blackshear, Judge.

. Suit by H. O. Howell against R. B. Ellis and wife. Judgment for defendants and plaintiff appeals. Reversed, and judgment rendered for plaintiff.

Smith & Lanier, of Jasper, for appellant. C. C. Ingram and A. S. McKee, both of Jasper, for appellees.

KING, J. Appellant, H. O. Howell, filed suit against 'R. B. ·Ellis and wife in the nature of trespass· to try title, the description in the petition being 84 acres of land situated in the county of Jasper and state of Texas, patented to plaintiff by the state of Texas by patent No. 424, Volume 49, dated the 17th day of· July, A. D. 1915, said tract of land being known as S. F. 11355, about ten miles west of· the county seat and bounded as follows: Beginning at the southeast corner of the William Williams labor on the west bank of Angelina river; thence down said river with its meanders S. 185 varas, S. 10° W. 180 varas, S. 30° W. 50 varas, west 202 varas, S. 75° W. 200 varas, S, 65° W. 80 varas, S. 55° W. 200 varas, N. 20° W. 75 varas, N. 20 varas, N. 25° E. 300 varas, N. 22° W. 130 varas, N. 65° W. 140 varas, N. 70° W. 130 varas, N. 5° E. 146 varas, N. 20° E. 120 varas, to a stake in the S. line of William Williams labor, from which a willow bears S. 50° E. 8 varas; thence east with the said line, 795 varas, to the place of beginning.

Defendants answered by plea of not guilty, and the following additional plea:

"And for further plea in this behalf, these defendants say that plaintiff ought not to. have and maintain his aforesaid action against them, because they say that claiming to be the true and lawful owners of the tract of land described as follows: Beginning at the southeast· corner of Penelope Blount labor on the west bank of Angelina river, a stake from which a pen oak marked 'P. B.' bears south 40 deg. east 2.5 varas, and another, same mark, ·bears north 65 deg. west 5.5 varas; thence down said river with its meanders 30 deg. east 75 varas, north 7 deg. east 200 varas, south 28 deg. east 150 varas, south 375 varas, second corner, a stake, from which a sweet gum marked 'W.' bears south 72 deg. west 3.2 varas, and an ash marked 'W. W.' bears north 28 deg.· east 3.4 varas; thence west at 2,023 varas came and good land, a stake, from which a sweet gum marked 'W. W.' bears north 75 deg. west 6.5 varas, and another, same mark, bears north 9 deg. west 10.5 varas; thence north at 501 varas intersects Mrs. Blount's boundary at a stake from which a cypress marked 'W.· W.' bears south 40 deg. east 4.5 varas, and another, same mark, bears north 2 varas; thence east at 1723 varas to the place of beginning."

Defendants also interposed the pleas of three, five, and ten year statutes of limitation., Upon trial before the court without a jury judgment was rendered against plaintiff that he take nothing by his suit, and that defendants recover their costs against him. From .this judgment this appeal has been perfected by the plaintiff.

The real and only issue in the case, as presented in the briefs of the respective parties,

is one of boundary; the defendants claiming that the entire 84 acres of the Howell tract is included within the William Williams labor.

The court, in his findings of fact, found that there are now no original corners of the William Williams labor, or the Penelope Blount labor, which lies immediately north of the Williams labor, or of the William Williams one-third league, which lies immediately north of the Penelope Blount on the ground, and that the meanders of the Angelina river, which forms the east boundaries of said surveys, as called for in their field notes, do not fit the calls, but there is a marked line running east and west, which is supposed to be the south line of the William Williams one-third league, and the north line of the Penelope Blount labor, and another marked line running east and west, which is supposed to be the south line of the William Williams labor and the north line of the N. Recindez 640-acre survey; that the Penelope Blount labor is located on the ground as claimed by the appellees, and that the south line of the William Williams labor, which joins the Blount labor on the south, runs west according to the calls in its field notes, will strike the bend in the Angelina river at a point where the northwest corner of the Howell tract is located, and would cross said river twice in reaching the southwest corner of the Williams labor; that the state of Texas issued a patent to appellant on the 17th day of July, A. D. 1915, to the lands set out in his petition; that the corners to said Howell tract are up, and that the northeast corner of said tract is located on the river at a point where the field notes of the William Williams labor call to leave the river and go west 2,023 varas, and the northwest corner of said Howell tract is located on the east side of the bend of the Angelina river at a point where the south line of the William Williams would cross the bend of the river; that the field notes as called for in the patent to the Howell tract fit the meanders of the river, and that the land is located where plaintiff claims it to be; that the bend of the river at the northwest corner of the Howell tract of land is characterized by a high bluff bank on the north and a sand bar on the south, and that the nature of the soil is erosive, and that the river is constantly eating its way northward into the William Williams survey.

His conclusions of law, based upon the foregoing facts, are to the effect that in order to properly lay out the Williams labor of land, it is necessary to reverse the calls of the field notes of said survey, and begin at the northeast corner of same; thence east at 1,723 varas to the northwest corner of same; thence south 500 varas to the southwest corner of same; thence east at 900 varas strike the Angelina river; thence up the river with its meanders to the place of beginning; and hence that the 84 acres of land patented to appellant is embraced within the field notes of the patent of William Williams labor, and that, therefore, he enters judgment for the defendants.

[1] We recognize the principle of law that permits reversing the calls of a survey when the survey can be more definitely and satisfactorily located by so doing than by following the calls in the order given in the field notes, but in this case, taking it for granted that the calls from the beginning point of the Williams northeast corner, which is the corner as accepted as the southeast corner of the Penelope Blount, that the calls do not fit the meanders of the river, and cannot, therefore, be satisfactorily run. The court reached no better result by reversing the calls and running west at 1,723 varas called for as the length of the north line of the William Williams labor; thence south 500 varas the length of the west line as called for in the Williams labor; thence east 900 varas to the Angelina river; thence up the river around the bend, including the Howell tract, to the place of beginning, because the original field notes of the William Williams call for a line 2,023 varas running east and west as the south line. The north line, according to the original field notes, also runs east and west. The only reason for reversing the calls in field notes is to better follow the footsteps of the surveyor. We have examined the entire testimony in this case, and have been unable to find a single corner or mark upon any line that could be identified with any reasonable certainty as the footsteps of the surveyor, who made the original survey of the William Williams in 1838. The mere running of lines according to course and distance, as given by the surveyor, does not locate his footsteps in the absence of any marked lines or corners that he established.

[2, 3] The Recindez survey, which is south of the William Williams labor, calls for its east line to intersect the William Williams south line at 1,350 varas from the Williams southwest corner, the Angelina river forming the east line of the Recindez, but it is found that from the Angelina river, where it reaches the William Williams labor, as indicated by the attached map, is but 900 varas from what is supposed to be the southwest corner of the Williams. Appellee insists upon the lines as found by the court, and the court was evidently moved by their contentions that to extend the south line of the William Williams from what the surveyors term the southwest corner of same, which is 500 varas south of the Penelope Blount south line, east to the Angelina river for the southeast corner of the Williams, or vice versa, would cross the Angelina river twice, and that the presumption is that the surveyor did not cross a navigable stream, as this is admitted to be, in violation of law inhibiting him from so doing, and that it becomes necessary, in order to respect this presumption, to

reverse the calls as he has done, and run the distance of the north line, as called for, and the west line, and then 900 varas east to the river and stop, and from that point to the place of beginning, up the meanders of the river. At best, the presumption is one of fact only, and in view of the fact that the overwhelming preponderance of the evidence shows that the river has been persistently eating its way northward into the William Williams tract, and that there is a bluff on the north side of the river with soil erosion, and that in the bend of the river south is a sand bar with growth of small timber, and the further findings of the court that these are the facts, we feel justified in holding that if the surveyor actually ran the south line of the William Williams, as stated in his original field notes, that he did not cross the river in violation of the statutes, but that since that time the river has crossed the line in its irresistible journey northward. By extending this line, which now crosses the river twice at the bend, we get practically the shape as the William Williams appears on the official maps introduced in evidence, and as is described in the original field notes. We get the lines practically the same as called for in the original field notes, but to accept the construction as placed by the court we have a very irregular and ill-shaped tract of land, that does not correspond in actual contour to the tract described by the original surveyor in his field notes, and we have a line arbitrarily located, according to neither natural nor artificial objects, or course and distance called for in the original field notes.

[4, 5] Appellees insist that the burden was upon appellant, claiming under a junior patent, to show that his land did not conflict with the lands of appellees, holding under a senior grant. This is true where the evidence adduced upon the trial suggests a conflict between two surveys, but we do not think it is incumbent upon one holding under a junior grant that is well defined and located on the ground to be compelled to locate surrounding grants of uncertain description, with certainty, before he can recover. Where two different tracts of land, though contiguous to each other, are bounded by field notes radically different as to course and distance, the trial court has no authority to change the field notes of the older survey so as to include the younger, when no evidence of the footsteps of the original surveyor could be found. It being the duty of the court, in fixing the bounds of a survey, to follow the footsteps of the surveyor, and the court not having followed the footsteps of the surveyor, was not authorized to radically change the lines as to course and distance as called for in the original field notes.

It is undisputed that the corner on the west bank of the Angelina river 900 varas east of the southwest corner of the William Williams is not an original corner located by the surveyor, but is a corner established in comparatively recent years; that there was no evidence of an original northwest corner of the William Williams, but that the corner there located was a new corner, and was located by course and distance; that the southwest corner of the Williams is a new corner; that there is a marked line between the southwest corner and the river, but that these marks are not old enough to be marks of the original surveyor; that there is no evidence of an old line between the Blount and Williams labor; that there is no evidence of the footsteps of the original surveyor on the supposed south line of the Williams.

[6] The footsteps of the surveyor, therefore, not being found, it became the duty of the court to ascertain the intention of the surveyor by his field notes and the circumstances and conditions surrounding the survey. Appellee insists that the boundary was established by reputation anti litem motam, and cites Stroud v. Springfield, 28 Tex. 649, and Jones v. Andrews, 72 Tex. 16, 9 S. W. 170. We have examined carefully the opinion of our Supreme Court in the Stroud v. Springfield Case, and the facts of this case do not come under the rule therein announced.

For the reasons assigned, this cause is reversed and rendered in favor of appellant.