**DUNLAP et al. v. ADAMS.    (No. 7232.)***

(Court of Civil Appeals of Texas. San Antonio. Feb. 11, 1925. Rehearing Denied March 11, 1925.)

1. **Boundaries ⬅️44 — Appellate court should affirm judgment, if possible, but rule is not so strict in boundary case.**

It is the duty of appellate court to affirm judgment, if possible, but rule is not so strict in boundary cases, where no right of appeal is provided.

2. **Boundaries ⬅️54(1)—Survey should be ordered, where confusion exists as to boundary claimed by each party.**

Where confusion exists as to location of boundary lines claimed by each party as shown by field notes, lines, corners, and marks of identification, court, perhaps, should order survey to determine true line.

3. **Adverse possession ⬅️114(2)—Title by adverse possession held not established under evidence.**

In action arising over boundary dispute for area between two grants, where last survey had been made over 40 years previously, title by adverse possession held not established under evidence.

4. **Boundaries ⬅️37(5)—Alleged agreed boundary not established by evidence.**

In action for disputed area relative to dispute over boundary between two grants, alleged agreed boundary held not established under evidence.

5. **Appeal and error ⬅️977(5)—Denial of motion for new trial will ordinarily be sustained.**

Ruling by trial court denying motion for new trial will ordinarily be sustained, except on good showing that action was arbitrary, or justice had not been administered.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction May 6, 1925.

On Motion for Rehearing.

**6. New trial ⊘⊃100—Refusal of new trial, requested on ground of newly discovered evidence, held error.**

In boundary dispute, refusal of new trial, requested on ground of newly discovered evidence, including map, field notes, and affidavit of surveyor, which had not been produced on former trial through any failure of diligence, and being very material, *held* error, especially where determination of boundary in judgment rendered was unsatisfactory as being indefinite and poorly defined.

**7. Judgment ⊘⊃18(2)—Judgment in boundary dispute, though failing to fix clear and conclusive boundary, held adequate.**

In boundary dispute, judgment fixing boundary could be sustained, notwithstanding pleadings did not set forth acreage of lands sued for within alleged boundary lines, and judgment was so vague as to require survey of whole tract to determine exact line decided.

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Action by W. T. Adams against B. H. Dunlap and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Canales, Davenport & West, of Brownsville, and Foard Townsend, of San Antonio, for appellants.

Graham, Jones, Williams & Ransome, of Brownsville, for appellee.

COBBS, J. This suit was brought in the nature and form of an action in trespass to try title for land, but in fact is a boundary suit by appellee against appellants, to recover a tract of land containing 9,694.5 acres out of La Feria grant in Cameron county, Tex. Both parties claimed the land by title, estoppel, agreed boundaries, acquiescence, and by the statute of limitations.

Appellee owns the Anastacio Trevino share of La Feria grant, as it was partitioned in 1843, and appellants own a portion of the Juan Jose Balli partition share, which adjoins the Anastacio Trevino partition share on the west. Further, appellee contends that the boundary, as claimed by him, is the true boundary and appellants are estopped by the recitals in deeds constituting their chain of title to claim east of the western boundary of the Anastacio Trevino partition share, as claimed by appellee in his petition.

The case was tried by the court without a jury, and the findings made by the court are embraced within the body of the decree.

The real question here is, first, to ascertain and locate the boundary line between the Anastacio Trevino and the Juan Jose Balli original partition shares of the La Feria grant, and to ascertain whether it has changed from its original location by agreement, acquiescence, estoppel, or by the statutes of limitation.

La Feria is a 12 league grant with a frontage of 2 leagues on the Rio Grande river, and a depth of 6 leagues from south to north. It was granted in the year 1790 by the Spanish authorities in America to Rosa Maria Hinojosa de Balli. During the month of June, 1777, the La Feria and Llano Grande, the adjacent grant on the west, were surveyed together by the royal authorities as the same survey. This survey was begun at the southwest corner of Llano Grande, on the Rio Grande, whence a "base line" was run, from west to east, parallel with the general course of the river. An old corral called Jose Antonio Cavazos was agreed to mark the boundary line between the two grants, and a very large mesquite was marked accordingly. Then on the next day the survey was continued 200 cordels to the edge of the plain of La Florida, where the southeast corner of La Feria was established. Then on the two following days the line was run from south to north 600 cordels, or 30,000 varas, for the eastern boundary of La Feria; thence from the northeast corner of La Feria from east to west 625 cordels to the northwest corner of Llano Grande, where the survey was discontinued. With these lines the acreage was calculated.

The exterior lines of the two grants only were actually measured on the ground, that is, the north boundary lines of both grants and the eastern boundary of the La Feria grant. These lines, with the base line which was run roughly parallelling the Rio Grande, which river forms the southern boundary line of both grants, and a projected west boundary of Llano Grande, afforded the only basis for a calculation of the acreage. The eastern boundary line of Llano Grande and the western boundary of La Feria are tied by the very large marked mesquite on the base line at the old corral of Jose Antonio Cavazos.

The La Feria grant was in 1843 partitioned among the six owners, and the survey and partition was made by Rafael Chovel. The owners being unable to agree upon the locus of the line tree and the old corral of Jose Antonio Cavazos, which marked the common boundary between Llano Grande and La Feria, as shown by the 1777 survey, the place called Zacatal was agreed on by the owners of La Feria as marking their western boundary, and they also agreed among themselves upon the order in which they should receive their respective allotments. The easternmost, or lowest, of these six partition shares, with a width of 2015.88 varas, was thus set apart to Anastacio Trevino from whom appellee deraigns title, and the share adjoining it on the west, with a width of 1,428.57 varas, was set apart as the inheritance of Juan Jose Balli, under whom appellants hold title. In making these partitions Chovel ran no lines on the ground, save the line 2,355.18 varas

long, extending north from the original southeast corner of La Feria to fix the beginning point of his base line. The six partition shares were only established by measurements along the base line with marks where the interior boundary lines of the several partition shares, if projected at right angles with this base line, would intersect it.

In 1848 Alfred Dupouy in the same way partitioned Llano Grande among its then owners, and rechecked some or all Chovel's work in La Feria. This recheck of Chovel's work showed that the Anastacio Trevino, as established by Chovel, was only 1,957.5 varas wide along Chovel's base line, instead of 2,-015.58 varas, as stated in the act of partition, but this Dupouy increased to 2,009.5 varas by adding 52 varas on the east, to correct an error made by Chovel in correcting the variation of the needle. Thus he located the eastern boundary of La Feria 52 varas east of Chovel's point of departure for his base line.

During the latter part of 1869 and early months of 1870 H. M. Fields actually surveyed several of the original partition shares of La Feria on the ground, with various subdivisions thereof, and a plat of his work appears in the record. No field notes of any survey by Fields of any portion of the partition share line in controversy have been found, but evidence was introduced to show that he actually surveyed the line in controversy in this suit.

That part of the Juan Jose Balli partition share lying north of the center of Tio Cano Lake was then owned by Pedro Balli and Albert, Peter, and Nicholas Champion, as was all that portion of the same partition share lying south of Arroyo Colorado. The Bigelow tract separated the two Champion-Balli tracts. J. J. Cocke, the deputy county surveyor of Cameron county, in 1877 ran out the eastern boundary line of La Feria grant —the first time, apparently, that this line was established on the ground by actual survey. Later in the same year J. J. Cocke surveyed that portion of the Juan Jose Balli partition share which lies north of Tio Cano Lake, being the portion involved in this suit, for the purpose of partitioning it among Pedro Balli and Albert, Peter, and Nicholas Champion, and a plat of this partition survey, together with field notes, are a part of the record in this case. What the court established as a boundary line is not clear.

[1] It is our duty, when trial courts have tried a case and entered judgment, to affirm, if possible, but the rule is not so strict in boundary cases, as there is no right of appeal provided.

[2] In this case, just where either party claims the boundary line to be located, by field notes, lines, corners, and marks of identification, is confusing and not clear. In view of the holding by the trial court and the contention of appellant as to its true holding, the question is, Can any competent surveyor accurately establish the boundary lines and write field notes thereof without a tracing out, measuring on the ground, and doing other necessary work? This seems a case where a survey should be ordered by the court and field notes made indicating the true boundary line between the parties. Article 7747, R. S.; Wilhelm v. Bauman, 63 Tex. Civ. App. 146, 133 S. W. 292; Provident Nat. Bank v. Webb, 60 Tex. Civ. App. 321, 128 S. W. 426.

[3, 4] We do not think there is sufficient evidence to support the plea of limitation or agreed boundary; nor do we think the boundary line is clearly defined by any testimony.

Appellant presented to the trial court a written motion for a new trial, and among other things averred:

"Defendants would now respectfully show to the court that they did not offer such evidence upon the trial of this cause because after diligent inquiry from the said C. E. Hammond, who is now ill in San Antonio, Tex., and from Jose Angel Champion, who made such conveyance as attorney in fact for himself and the other heirs of Nicholas Champion, deceased, and who testified as a witness in this case, they were unable to learn the source of the description and field notes contained in said deeds. And although defendants, after this trial began, were informed and thereafter believed that the field notes contained in said deeds were taken from a plat and field notes of the partition survey made by said J. J. Cocke for Nicholas Champion and his brother in 1877, as above stated, and referred for the eastern boundary of said Nicholas Champion lands to the very line claimed by defendants in this case, and a map and plat of said survey duly authenticated by his affidavit as to its correctness had been delivered by the said J. J. Cocke to the defendant Harry Ezzell or those under whom he claims in 1912, and interrogated the said J. J. Cocke, while testifying as a witness in this cause, with regard to such map, field notes, and affidavit, the witness Cocke replied to such interrogation that he had no recollection of having made such plat or affidavit, and defendants were then unable to ascertain the facts from their codefendant Harry Ezzell, for the reason that he was then and is now sick at Mineral Wells, Tex., and too ill to attend the trial of this case. But since the trial of this case J. S. Snyder, a purchaser from the defendant Harry Ezzell, but not a party to this suit, has discovered the said map, field notes, and affidavit of the said J. J. Cocke among the title papers to said land, delivered to him by the said Harry Ezzell, and defendants are now prepared to offer the same in evidence upon another trial of this cause, and thereby show that the calls in the deeds contained in their chain of title for the boundary line between the lands conveyed by such deeds and the land therein described as lately sold by Turner to Carter referred to the boundary line as established by the said J. J. Cocke in 1877, and not to the boundary line as located by him in 1906. And this court will appreciate the extreme importance and materiality of this newly discovered evidence in view of the fact that in rendering judgment for plaintiff herein the judge of this court informed counsel for defendants that he

rendered such judgment principally upon the issue of agreed boundary, and the only conceivable evidence in the record tending to connect defendants or either of them, or those under whom they claim with any agreement to recognize the line as claimed by plaintiff as the true boundary line, is the recitals contained in the deeds in defendants' chain of title, and this newly discovered evidence will show, not only that such recitals do not have such effect, but that they expressly call for the line as claimed by defendants, and that the post called for in the field notes contained in said deed from the heirs of Nicholas Champion to Hammond as the southeast and beginning corner of the land thereby conveyed, and described as a post set on eastern bank of Tio Cano Lake, and likewise referred to in all the deeds in defendants' chain of title as the locative corner for the east boundary line of defendants' lands, was the identical post identified in the evidence in this case as the post marked by two ebony trees south of the Antonio Torres house, and near the northeast corner of Tio Cano Lake."

[5] Ordinarily, where the trial court has passed upon a motion for a new trial and denied it, such ruling will be sustained by appellate courts, unless some special good reason appears to show the action was arbitrary or that justice had not been administered. This being a boundary case giving us final jurisdiction, being an equitable proceeding too, we have specially considered the proposed testimony which might, if considered by the trial court, have produced a different result.

Owing to the unsatisfactory nature of the testimony offered to locate the true boundary line involved in this case, it is apparent that appellant should have had the benefit of the matters set out in the motion for a new trial to be considered in connection with the whole case. The testimony to authorize a judgment should have that positive nature that fixes a definite and conclusive boundary.

For the reasons given, we feel constrained to grant the motion for a rehearing. We withdraw our original opinion, and substitute this in lieu thereof. The motion of appellant is granted, the judgment is reversed, and 'the cause is remanded for a new trial.

### On Motion for Rehearing.

The motion for rehearing of appellee as well as the entire record, together with his original brief and motion for rehearing, has again been very fully considered by each member of this court. It will be remembered that this case was argued very fully orally and ably by both appellants' and appellee's attorneys, and we thereafter gave appellee ample time in which to file a reply brief, which he did, and, after considering the case in connection with the briefs of both parties, with much doubt, we wrote an opinion affirming the judgment of the lower court.

Upon considering appellant's motion for a rehearing, and not being satisfied with our judgment in the first instance, we withdrew that opinion and reversed and remanded the case. Appellee had ample time in which to answer appellant's motion, but did not, as appellant has not answered this one.

We fail to see any good reason for appellee's criticism on the ground of lack of time to present his side of the case. In fact, it was ably presented by appellee's counsel, as shown in the first instance, because we took his view of the testimony and affirmed the judgment. Even now we fail to see how much harm can result from a retrial of this case by simplifying the pleading and permitting all the legitimate evidence to go in. It will at last always depend very largely upon the unsatisfactory testimony of Cox, a very old man, but we think the testimony offered in connection with the evidence to show the mistake of Cox was a reasonable request.

[6, 7] The statement alleged to have been made by the trial court is set out in the motion for a new trial addressed to the trial court's discretion, which seems not to have been challenged nor when the court was considering the motion denied by the court. There was ample diligence shown as well as the materiality of the testimony offered.

The judgment of the trial court adjudges to the appellee first a specific recovery for 9,694.5 acres in Cameron county, Tex., out of the La Feria grant, following the broad description of the land contained in appellee's petition. After this broad and voluminous description by field notes and reference to certain deeds for description and identification, the judgment attempts to fix the boundary line between the parties in the following language:

"And also included in said field notes and boundaries of said 9,694.5 acres of land are all the lands claimed and sued for and described in the joint first amended original answer, filed herein on January 21, 1924, by each and all of the defendants hereinbefore named, except as to a comparatively small portion thereof which lies north of the north line of said 9,694.5 acres, and as to said portion of said lands so claimed by said defendants and lying north of the north line of said 9,694.5 acres of land, so claimed by defendants or any one or more of them, plaintiff has at no time claimed or asserted title, and said portion of the lands so claimed by said defendants and lying north of the north line of said 9,694.5 acres of land were and are not in controversy in this suit.

"As to all the lands claimed by any one or all of the defendants, and which lie west of the western boundary line of said 9,694.5 acres of land as herein located, plaintiff will take nothing, as said west line of said 9,694.5 acres of land as described above is hereby adjudicated and established as being the eastern boundary line of all those portions of lands owned by each and all of said defendants, which lie south of said post herein established as being the north-

west corner of the lands owned by the plaintiff, W. T. Adams.

"It is therefore the further order, judgment, and decree of this court that all right, title, claim, and interest in and to any of said 9,694.5 acres of land as hereinbefore bounded and described, heretofore asserted by said defendants or any one or more of them, are hereby canceled and held for naught, and all of same are hereby divested out of said defendants and each and all of them and vested in the plaintiff W. T. Adams, and all cloud on the title to all of said 9,694.5 acres of land in said W. T. Adams as herein bounded and described, and which could have arisen in any way from any claim heretofore asserted by said defendants or any one or more of them is hereby fully removed."

For a sheriff with a writ to locate and seize the land to the boundary line it would require him to make a survey of the whole tract by an engineer to determine the boundary line lying north of the north line of the 9,694.5 acres and the west line thereof, which is established as being the eastern boundary line of appellant's lands which lie south of a post established as being the northwest corner of the land owned by appellee. The identical boundary line should be described in the pleading. Provident Nat. Bank v. Webb, 60 Tex. Civ. App. 321, 128 S. W. 426. It is held in Wilhelm v. Bauman, 63 Tex. Civ. App. 146, 133 S. W. 293:

"The purpose of a boundary suit is to fix and determine the boundary line in controversy, so that an officer charged with the duty of executing a writ of possession can go upon the ground and, without exercising judicial functions, ascertain the locality of the line fixed by the judgment; and, if the judgment does not accomplish that result, it is of no avail, and should be set aside on appeal. Edwards v. Smith, 71 Tex. 161, 9 S. W. 77; Jones v. Andrews, 72 Tex. 17, 9 S. W. 170; Reed v. Cavett, 1 Tex. Civ. App. 156, 20 S. W. 837; Provident Nat. Bank v. Webb, 128 S. W. 426. The case last cited was differentiated by this court from the other cases cited; but, in the course of the opinion, Mr. Justice Jenkins correctly stated the rule applicable to this class of cases in the following language: 'In a boundary suit brought in form of trespass to try title, where there is a general verdict for the plaintiff, if the plaintiff has not in his petition described the boundary so that it can be identified by objects found on the ground, a judgment following the verdict is void, for the reason that it cannot be executed without the officer attempting to execute the same assuming judicial functions and determining the location of such boundary; and such a judgment would not sustain a plea of res adjudicata in a subsequent suit between the same parties involving the same subject-matter.' "

It will be observed from reading the pleading of both parties that the acreage of the lands sued for are not set out as such within the description of the entire pleading or within the alleged boundary line. What in acreage does appellee claim that appellant is in possession of? What specific land is sued for as contained within his alleged disputed boundary line upon which appellant asserts his claim? From what specific described lands within the boundary would appellant be dispossessed by any writ?

But for the error of the court in not granting a new trial, notwithstanding the pleadings and judgment, the case could be affirmed. However, we believe for the reasons given by us the judgment should be reversed for another trial, and, so believing that justice has not been administered, appellee's motion for a rehearing is overruled.