## PERMIAN OIL CO. v. SMITH et al.

### No. 2559.

Court of Civil Appeals of Texas. El Paso.

Feb. 4, 1932.

Rehearing Denied March 10, 1932.

J. B. Dibrell, of Seguin, Dibrell & Starnes, of Coleman, John Sayles, of Abilene, and Hart Johnson, of Ft. Stockton, for plaintiff in error.

John Rogers, of Tulsa, Okl., and Smith & Neill, of San Angelo, for defendant in error Chapman.

James Cornell, Gibbs & Lewis, Harris, Harris & Sedberry, and J. W. Stovall, all of San Angelo, Burney Braly, Hiner & Pannill, and Phillips, Trammell, Chizum, Price & Estes, all of Ft. Worth, W. C. Jackson, of Ft. Stockton, Kilgore, Rogers & Montgomery, of Wichita Falls, Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., and R. H. Whilden and Thompson, Knight, Baker & Harris, all of Dallas, for other defendants in error.

Statement of Case.

HIGGINS, J.

This suit was instituted June 21, 1928, by plaintiff in error against the defendants in error to recover section 103, in block 194, Texas Central Ry. Co. survey in Pecos county, containing 407 acres, and to recover the value of oil produced from the land to the date of trial.

For convenience the parties will be designated as they were in the trial court.

In the amended petition the land is described as follows:

"Sec. 103, Block 194, T. C. Ry. Co. Original Grantee, situated in Pecos County, Texas, described as follows: Beginning at a stk and md at the N. E. Cor of Sur. No. 102, Block No. 194, T. C. Ry. Co. Cert. 2303, for the N. W. Cor of this Sur; Thence E. 1900 vrs to stk and md for the N. E. Cor. of this sur; thence S. 1209 vrs. to a stk and md for the S. E. Cor. of this sur; thence W. 1900 vrs. to a stk and md for the S. E. cor of this sur; thence N. 1209 vrs. to the place of beginning.

"Four hundred and seven (407) acres of land described by metes and bounds as follows:

"Beginning at a set rock in the South boundary line of Runnels County School Land Sur. No. 3, marked N. W. 103, S-B, from which set rock North edge of Cap Rock bears North 88 degrees 17' West and pointed peak bears North 8 deg. 35' West which set rock and beginning corner is 3800 vrs North 89 Deg. 48' East from the S. W. Cor. of said Runnels County School Land Sur. No. 3, said South West corner of said Runnels County School Land Sur. No. 3, being a rock mound marked S. W. 3 R. C. S. L. which is 215 vrs South of another rock mound from which other rock mound west edge of Cap Rock bears South 13 degrees 52' East and high point of sharp top hill bears North 78 Deg. 53' East.

"Thence from said set rock marked N. W. 103 S-B, (beginning corner of this tract) North 89 deg. 48' East and with South boundary line of said Runnels County School Land Sur. No. 3, a distance of 1900 vrs to a set rock marked N. E. 103 and N. W. 104, S-B, from which cap rock L side saddle bears South 21 deg. 26' East, pointed peak bears North 18 deg. 6' west and north edge cap rock bears North 89 degrees 11' West;

"Thence at a right angle to the South line of said Runnels County School Land Sur. No. 3, South 0 deg. 12' East 1209 vrs to a set rock marked S. E. 103 and S. W. 104 S-B from which point peak bears N 18 degrees 27' West and North edge cap rock bears S 68 Degrees 9' West:

"Thence South 89 degrees 48' West 1900 vrs. to a set rock marked S. W. 103, S-B from which edge cap rock L side saddle in mountain bears South 52 degrees 19' East and L edge cap rock bears S 15 degrees 57' East:

"Thence north 0 degrees 12' West 1209 vrs to the place of beginning."

Survey 103 was patented to M. C. Miller, assignee, on April 13, 1894. The field notes in the patent read:

"Beginning at a stake and mound at the N. E. Cor. of Sur. No. 102, Block 194, T. C. R. R. Co., Cert. 2302, for the N. W. Cor. of this Survey;

"Thence East 1900 varas to a stake and mound for the N. E. Cor. of this Survey;

"Thence South 1209 varas to a stake and mound for the S. E. Cor. of this Survey;

"Thence West 1900 varas to a stake and mound for the S. W. Cor. of this Survey;

"Thence North 1209 varas to the place of beginning."

By deed dated November 28, 1896, Miller conveyed survey 103 to the City National Bank of Austin, and by deed of July 6, 1905, the bank conveyed the same to John Monroe.

By patent dated November 19, 1886, survey No. 35, block 194, Gulf, Colorado & Santa Fé Railway Company survey containing 640 acres of land was granted by the state to J. S. Daugherty, assignee. Title to survey 35 passed from Daugherty to John Monroe by deeds dated September 2, 1902, and September 12, 1908. By regular claim of title it was shown that John Monroe became the owner of section 104, block 194, Texas Central Railway Company survey.

After introducing in evidence the patents and deeds mentioned, the plaintiff then offered in evidence the pleadings and judgment rendered in cause No. 854, John Monroe v. T. F. Hickox, in the district court of Pecos county. That suit was filed August 22, 1910.

The amended petition upon which that case was tried was in the statutory form of the action in trespass to try title; the land being described in the petition as follows:

"First.

"All Section No. 104, Block 194, T. C. Ry. Co. original grantee, situated in Pecos County, Texas.

"Second.

"All of Section No. 103, Block 194, T. C. Ry. Co. original grantee, situated in Pecos County, Texas, described as follows:

"Beginning at a stake and mound at the N. E. Cor. of Survey No. 102, Block 194, T. C. R. R. Co., Cert. 2302, for the N. W. Cor. of this survey.

"Thence east 1900 vrs to a stake and mound for the N. E. Cor. of this survey.

"Thence South 1209 vrs to a stake and mound for the S. E. Cor. of this survey.

"Thence West 1900 vrs to a stake and mound for the S. W. Cor. of this survey.

"Thence North 1209 vrs to the place of beginning. And said Section No. 104, Block No. 194, T. C. Ry. Co., is described by metes and bounds as follows, to-wit:

"Beginning at a stake and mound at the N. E. Cor. of Survey No. 103, Block No. 194, for the N. W. Cor. of this survey.

"Thence East 1900 vrs to stake and mound for N. E. Cor. of this survey.

"Thence South 1209 vrs. to stake and mound for S. E. Cor. of this survey; thence West 1900 vrs to stake and mound for S. W. Cor. of this survey. Thence North 1209 vrs to the place of beginning."

The answer of Hickox consisted of a general demurrer, general denial, and plea of not guilty.

The judgment rendered reads: "On the 28th day of Feb. A. D. 1911, came on to be heard the above numbered and entitled cause in its regular order on the docket, and thereupon came the plaintiff in person and by attorney, and also came the defendant in person and by attorney and all parties announced ready for trial, and no jury having been demanded and all issues of law and fact being submitted to the court, the pleadings were thereupon read, the evidence introduced and argument of counsel made, and the court after hearing same, thereafter on the 4th day of March A. D. 1911, in open court pronounced judgment in favor of the defendant. It is therefore ordered, adjudged and decreed by the court that the plaintiff John Monroe take nothing by his suit, against the defendant T. F. Hickox, and that the defendant T. F. Hickox go hence without day and recover against the plaintiff John Monroe all costs of suit, for which execution will issue. To which judgment of the court the plaintiff John Monroe in open court excepted and gave notice of appeal to the Court of Civil Appeals of the 4th Supreme Judicial District of Texas, sitting at San Antonio, Texas, and upon plaintiff's request and good cause being shown he is hereby given sixty days after the adjournment of this court within which to file his statement of facts herein."

Appeal bond was filed by Monroe, but it was shown the appeal was not further prosecuted and was abandoned.

Hickox later died. His surviving wife and children conveyed section 103 to the plaintiff, and assigned to it all claims and demands for damages arising out of the appropriation and conversion of oil taken from the land.

Evidence was also offered by plaintiff showing that there was no conflict between surveys 103 and 104, on the one hand, and surveys 34 and 35 in block 194, Gulf, Colorado & Santa Fé Railway Company. This evidence shows surveys 103 and 104 are north of surveys 34 and 35, and that in fact there was a vacant strip between them at the time the suit of Monroe v. Hickox was pending and subsequent to the judgment therein.

There was a mass of other oral and documentary evidence introduced by the plaintiff which it is deemed unnecessary to here state. The theory of the plaintiff is that, by the judgment rendered in Monroe v. Hickox, the defendant Hickox acquired the title of John Monroe to section 103. The statement made above sufficiently shows the chain of title relied upon by the plaintiff.

Hon. W. C. Douglas, before whom Monroe v. Hickox was tried, filed therein his findings of fact and conclusions of law. Some of the defendants here sought to have the court require the plaintiff to offer in evidence, in connection with the pleadings and judgment in Monroe v. Hickox, such findings and conclusions. This the court refused to do. Thereupon the defendants, in support of a motion to strike out the pleadings and judgment in Monroe v. Hickox, tendered the entire record in the case. This record so tendered, inter alia, consisted of the findings and conclusions of Judge Douglas and the notices by Monroe and Hickox, respectively, of the title papers filed by them.

The court, over plaintiff's objection, admitted the findings for all purposes and without limitation. Thereupon the defendants, except some not necessary to name, moved to strike out the pleadings and judgment in Monroe v. Hickox. The motion was sustained and the jury instructed to find for the defendants. In sustaining the motion to strike and give the peremptory instruction, the learned trial judge stated his reason therefor as follows:

"Gentlemen, I have arrived at a conclusion in this matter. I am going to sustain the motion to strike the judgment and I am going to instruct a verdict for the defendants.

"The plaintiff's title depends entirely upon the judgment rendered by this court in the case of Monroe v. Hickox. The judgment, construed in the light of the findings of fact, shows beyond dispute that the issue attempted to be tendered therein was one of boundary. Neither the judgment nor the pleadings definitely apply the description to the ground, so that the controversy could be settled. If the plaintiff had obtained a judgment it would have left the controversy just where it started. The true location of Surveys 103 and 104, with reference to the land of the defendant, was the issue sought to be tendered in the case of Monroe v. Hickox. The Plaintiff's pleadings failing to adequately describe the land, the issue was not raised.

"I take it to be fundamental, for either party to an action to be bound by an issue, it must have been properly, that is, legally tendered. It must be so tendered that a determination thereof will be alike mutually binding on the plaintiff and the defendant. This judgment cannot be aided by the legal fiction.

of the possession of the defendant. If defendant was in possession of the land, the question remained and still remains of what land? The answer. the land described in plaintiff's petition, is insufficient, for plaintiff's petition, read in the light of the controversy, described no land.

"It is my deliberate opinion that the judgment in question as to the land described in plaintiff's petition herein is neither binding on Monroe nor his privies.

"One word more. In deciding the motion to strike, the judgment was construed in the light of the title papers filed, although the findings of fact, to my mind, amply justify the construction heretofore indicated.

"The action of trespass to try title is a formalistic action. The provisions of the statute as to the filing of abstracts can have no other purpose than to aid in determining the issues."

The findings and conclusions in Monroe v. Hickox read:

"In District Court, Pecos County, Texas,
"February Term, 1911.
"No. 854.

"John Monroe vs. T. F. Hickox.

"I, W. C. Douglas, Judge of the District Court of Pecos County, Texas, have this day prepared and do hereby order filed in this cause, the following findings of fact and conclusions of law, to-wit:

"Findings of Fact.

"1. Block C. 4 G. C. & S. F. Ry. Co., is composed of sixty-four surveys. The field notes show that they were all made by H. C. Barton, Deputy Surveyor of Pecos County, between the 5th and 20th days of Oct., 1881. According to the field notes of Survey No. 4, of this Block, the northwest corner was marked as follows: 'pile of pebbles for the. N. E. corner of Survey No. 3, this block, from which capstone mountain bears south 1500 vrs.' The Northeast corner is described as 'stone mound from which capstone mountain bears S 19 E, and another capstone mountain bears N. 70 E.' Corners answering to this description were found on the ground located relatively as shown. in the sketch of Surveyor W. T. Hope.

"2. Block Z, Texas Central Railway Company is composed of fifty-four surveys. They were made by F. Schadowsky, between the 4th and 8th days of November, 1882. The beginning calls of this block tie on to Block C4. There is no testimony locating this block on the ground.

"3. Block 194, G. C. & S. F. Ry. Co., is composed of one hundred surveys, the record showing they were made by L. W. Durrell, Dep. Surveyor of Pecos County, between the 17th and 31st days of May, 1883. It appears that he made fifteen surveys on each of the first six days and ten surveys on the seventh day. The beginning calls of this block tie on to Block Z, G. C. & S. F. Ry. but there is no testimony locating on the ground any of the original land marks called for in the field notes.

"3. Block No. 178, Texas Central Railway Company, is composed of thirty-six surveys, the record showing they were made by L. W. Durrell, Deputy Surveyor of Pecos County. The first eighteen of these surveys appear to have been made on November 21st, 1882, and the last eighteen made on November 22nd, 1882. The beginning call starts at river survey at No. 543, in the name of H. & G. N. Ry. Co. None of the land marks called for by the field notes of this block were located on the ground by any of the testimony.

"4. The river surveys shown on the map of Surveyor W. T. Hope were made in the year 1876 by Jacob Kuechler, Deputy Surveyor of Pecos County, Survey 4 of Block C4, G. C. & S. F. Ry. Co., was located on the ground from objects found corresponding to the calls for its northeast and northwest corners relatively as shown on Hope's map. Survey 71, I. & G. N. Ry. on the Pecos River was located on the ground relatively as shown in the map of Surveyor W. T. Hope, with its northwest corner marked by stone mound; there is no call in the field notes for a stone mound at this point. Survey No. 61, I. & G. N. Ry., was located on the ground relatively as shown on Hope's map by course and distance from the northwest corner of Survey 71, established as aforesaid, and its location verified by a call of its field notes for a road on a mesa. Survey No. 3. Runnels County School land, was located on the ground by course and distance based on Surveys 71 and 61, which were located on the ground as aforesaid. All of these locations were made on the ground by Surveyor W. T. Hope and were based on actual runnings as shown by their lines delineated on his map. The balance of the surveys shown on the map of Surveyor Hope were platted in by him according to their calls for course and distance based on his actual work on the ground shown by the red lines, and with relation to the aforesaid land marks.

"5. Beginning at the Northeast corner of Survey 4, Block C 4, G. C. & S. F. Ry. Co., as found on the ground, and running by course and distance and thereby locating Surveys 103 and 104, Texas Central Railway, these two surveys would lie adjoining and immediately south of Survey No. 3, Runnels County School land, and would not conflict with Surveys 34 and 35, Texas Central Railway.

"6. By constructing Block 194, G. C. & S. F. Ry., based on the calls for the river surveys, as located on the ground, Surveys 34 and 35, G. C. & S. F. Ry. Co., Block 194, would lie

adjoining and immediately south of Survey No. 3, Runnels County School land and be in total conflict with Surveys 103 and 104.

"7. Surveys 103 and 104, being the land sued for by plaintiff, are junior surveys to Surveys 34 and 35. ·

"8. I am unable to follow the footsteps of the original surveyor in establishing Block 194, G. C. & S. F. Ry., either in the original locations of any of the sections or in the location of the corrected surveys, and I am unable to ascertain the true intention of the original surveyor as to locating this block on the ground.

"9. I am unable from the testimony in evidence to ascertain the true location on the ground of Surveys Nos. 103, 104, 34 and 35 above referred to.

"10. I find that Block 194, G. C. & S. F. Ry., was originally located by an office survey.

"11. I find that the calls of Block 194 to tie on to Block Z and its calls to tie on to the river surveys are repugnant to each other and inconsistent, and I am unable to determine which of these calls should be regarded as a mistake of the surveyor.

"12. I find that the plaintiff is the legal owner and holder of the fee simple title to Survey No. 103, Texas Central Railway and that he holds Survey No. 104, under a contract of purchase from the State of Texas, in accordance with the School Land Laws, and that he has made his proof of occupancy thereon as required by law, and that his said sale is in good standing.

"13. Defendant is the holder and entitled to the possession of Survey No. 34, under a contract of purchase from the State of Texas, in accordance with the School Land Laws, and his sale is in good standing.

"14. The said Hope map is hereby referred to and made a part hereof.

### "Conclusions of Law.

"1. The burden of proof is upon the plaintiff to establish the location of the two tracts of land sued for upon the ground, and to show that there is no conflict between said surveys and Surveys Nos. 34 and 35, the said Surveys Numbers 34 and 35 being senior surveys.

"2. It is presumed that the work of an official surveyor was actually done on the ground, but the amount of work he certifies to having done within a given time, the character of the work as called for by the field notes, and the lack of evidence found on the ground, discrepancies in distances between objects called for and the like, may be sufficient to rebut said presumption.

"3. Where there are two theories upon which a survey which is not fixed to the ground by any of its calls can be constructed, and one theory shows a conflict between a senior and a junior survey, and the other theory shows no conflict between them and the evidence, aided by the presumption of law, furnishes no method for following the footsteps of the original surveyor, or for arriving at the intent and purpose of the original surveyor, the presumption of law will be resolved in favor of the senior survey that there is a conflict, the owner of the junior survey being the plaintiff.

"4. Having found as a fact that the location of Surveys Nos. 34 and 35, and 103 and 104, cannot be located upon the ground from the testimony in evidence and that there is a total conflict between them based on certain calls, and no conflict based on other calls, which theories are irreconcilable and the true theory unascertainable from the testimony, I conclude that the plaintiff should take naught by this suit, and that the defendant should recover his costs herein.

"W. C. Douglas, Judge District Court, 63rd Judicial District."

Survey 34, referred to in the findings, with many other surveys, was conveyed by Hickox and wife to I. G. Yates by deed dated June 1, 1915, introduced in evidence by the plaintiff herein.

### Opinion.

■ The judgment in Monroe v. Hickox was that the plaintiff take nothing by his suit and the defendant go hence without day. It has been often held that a judgment of this nature, in an action of trespass to try title, amounts to an adjudication that the title to the land is in the defendant and as effective for that purpose as if it had expressly so decreed. Drummond v. Lewis (Tex. Civ. App.) 157 S. W. 266; Wilson v. Swasey (Tex. Sup.) 20 S. W. 48; McAllen v. Crafts (Tex. Civ. App.) 139 S. W. 41; Dunn v. Land (Tex. Civ. App.) 193 S. W. 698, and other cases which might be mentioned.

Plaintiff contends, under these cases, that Hickox acquired Monroe's title to section 103. It further contends that the vital issue and subject-matter involved in Monroe v. Hickox, as shown by the pleadings, was the title and right of possession to sections 103 and 104 in block 194, Texas Central Railway Company survey, and that the pleadings only can be looked to for the purpose of determining what was the vital issue involved and adjudicated in that suit.

On the other hand, defendants assert the controlling question at issue in Monroe v. Hickox was simply one of boundary, as shown by the trial court's findings and conclusions filed in that case, and, such being its nature, the judgment therein was void because of inadequacy in the description of the land in controversy.

■ It is thus apparent the first controlling question in the present case is whether such findings and conclusions can be looked to for the purpose of ascertaining the true issue

involved in Monroe v. Hickox and the validity of the judgment therein rendered. If this cannot be done, then, under the authority of Freeman v. McAninch, 87 Tex. 132, 27 S. W. 97, 47 Am. St. Rep. 79, and other cases cited by plaintiff, the court erred in excluding the pleadings and judgment in Monroe v. Hickox.

R. S. art. 2208, reads as follows: "Upon a trial by the court, the judge shall, at the request of either party, state in writing the conclusions of fact found by him separately from the conclusions of law. Such findings of fact and conclusions of law shall be filed with the clerk and shall be a part of the record."

R. S. art. 2209, reads as follows: "Where a special verdict is rendered, or the conclusions of fact found by the judge are separately stated, the court shall render judgment thereon unless set aside or a new trial is granted."

Under these statutory provisions, the findings and conclusions are to be regarded as a part of the record, and the findings of fact constitute the basis of the judgment rendered.

The plaintiff introduced in evidence the pleadings and judgment in Monroe v. Hickox. Having offered a part of the record there are authorities holding that this of itself gave to defendants the right to introduce the other pertinent portions of the record. Fowler v. Stonum, 6 Tex. 60; Hughes v. Driver, 50 Tex. 175; 1 Chamberlain on Ev. § 513, p. 663; 3 Wigmore, § 2110, p. 2854; Jones on Ev. (2d Pocket Ed.) § 621. But, aside from this, the authorities now to be quoted support the admissibility of the findings and conclusions. In Greenleaf on Evidence, vol. 1, § 532, it is said: "When a former judgment is shown by way of bar, whether by pleading or in evidence, it is competent for the plaintiff to reply that it did not relate to the same property or transaction in controversy in the action to which it is set up in bar and the question of identity thus raised is to be determined by the jury upon the evidence adduced. And though the declaration in the former suit may be broad enough to include the subject matter of the second action, yet if upon the whole record it remains doubtful whether the same subject matter were actually passed upon it seems that parol evidence may be received to show the truth. So also if the pleadings present several distinct propositions and the evidence may be referred to either or to all with the same propriety, the judgment is not conclusive but only prima facie evidence upon any one of the propositions and evidence aliunde is admissible to rebut it."

In 15 R. C. L., § 532, p. 1050, it is said:

"Ordinarily the pleadings in a former suit when introduced in a second action will show what was within the issues and determined in the first suit but it is a well settled general rule that extrinsic or parol evidence is admissible to show what was involved in the issues and settled by the judgment in a former action whenever the record leaves these facts in uncertainty provided that such evidence does not amount to a contradiction of the record of the judgment or of recitals embodied in it. Under this principle parol evidence may be admissible in proper cases to identify the subject matter of a prior suit, to show that in a prior action of trespass a question as to the title or the boundaries was tried and determined, or to prove that the validity of a deed was passed on in a prior suit between the parties. * * * Likewise where several issues are presented by the pleadings and the record fails to show upon which in fact the judgment was rendered it is competent to show that fact by evidence aliunde. Thus if in a former action the defendant interposed two different pleas and recovered a general verdict, extrinsic evidence would be admissible to show that the verdict was based on one only of these pleas and that the matter involved in the other plea was not adjudicated. The admission of extrinsic evidence in such cases is deemed to be for the purpose of explaining the record, and, therefore, is not considered as violating the rule against the contradiction of the record of a judgment by extraneous evidence."

"The practical effect of the operation of the two rules is to impose the limitation on extrinsic evidence to explain an ambiguous judgment that such evidence must not be inconsistent with such judgment. In other words while it is not permissible to introduce extrinsic evidence to vary or contradict a judicial record, parol or other extrinsic evidence which is not in conflict with the record may be introduced to aid and explain it by showing the precise questions which were determined, or that certain questions were not passed upon, or otherwise clear up existing doubts."

In Russell v. Place, 94 U. S. 606, 608, 24 L. Ed. 214, Justice Field, speaking for the United States Supreme Court, says: "It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record,—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered,—the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evi-

dence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible."

In the case of Cromwell v. Sac County, 94 U. S. 351, 356, 24 L. Ed. 195, the same judge says: "It is not believed that there are any cases going to the extent that because in a prior action a different question from that actually determined might have arisen and been litigated, therefore such possible question is to be considered as excluded from consideration in a second action between the same parties on a different demand, although loose remarks looking in that direction may be found in some opinions. On principle, a point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause, because it might have been determined in the first action."

In Washington, etc. v. Sickles, 24 How. 333, 344, 16 L. Ed. 650, it is said: "It was competent to the defendants to show the state of facts that existed at the trial, with a view to ascertain what was the matter decided upon by the verdict of the jury. It may have been that there was no contest in reference to the fairness of the experiment, or to its sufficiency to ascertain the premium to be paid for the use of the machine at the first trial, or it may have been that the plaintiffs abandoned their special counts and recovered their verdict upon the general counts. The judgment rendered in that suit, while it remains in force, and for the purpose of maintaining its validity, is conclusive of all the facts properly pleaded by the plaintiffs. But when it is presented as testimony in another suit, the inquiry is competent whether the same issue has been tried and settled by it."

In Oldham v. McIver, 49 Tex. 556, it is said: "On a trial under a plea of res judicata, in a case like this, it is proper to look to the pleadings and judgment in the former suit, to ascertain whether the exact matter in controversy was decided, or necessary to the decision; and where that is doubtful from the face of the record, it is competent to resort to evidence aliunde to ascertain it."

In Barton v. Chrestman (Tex. Civ. App.) 275 S. W. 401, 405, it is said: "It is well settled that upon a plea of res judicata the entire record, which includes the pleadings, of the suit in which the judgment relied upon was rendered may be examined for the purpose of explaining any ambiguity in the judgment itself. [Citing cases.] Not only may the record be examined for this purpose, but extrinsic evidence is admissible to show what was involved and settled by the judgment when the record and judgment leave this matter in uncertainty provided such evidence does not contradict the record and judgment."

In American Freehold Land & Mortgage Co. v. Macdonell (Tex. Civ. App.) 54 S. W. 259, 260, it is said: "Appellee insists that the judgment of the federal court adjudicated against plaintiff every matter put in issue by the pleadings. The judgment entered recited that plaintiff Graham had proven no cause of action, and that, therefore, he take nothing by his suit. A judgment of this character is prima facie an adjudication of all the issues involved. It is, however, consistent with such a judgment that the court decided only some one issue which in itself was sufficient to warrant the judgment. The record of that proceeding does not affirmatively show that the court passed on all the issues. In such a case it seems well settled that parol testimony is admissible to show that certain of the issues only were adjudicated."

In Cook v. Burnley, 45 Tex. 97, it was said: "Whether the judgment actually rendered was made final and conclusive, in one way or the other, the question would equally remain open as to what issue was decided and what facts were involved in that issue, and conclusively determined in its adjudication when the judgment is pleaded in bar, as in this case."

In Horton v. Hamilton, 20 Tex. 606, it was said: "The principle upon which judgments are held conclusive upon the parties, requires that the rule should apply only to that which was directly in issue, and not to everything which was incidentally brought into controversy during the litigation."

In Pishaway v. Runnels, 71 Tex. 352, 9 S. W. 260, 261, it was said: "In the case before this court an inspection of the record discloses, in the former decree, and the findings of law and facts upon which it was entered, that no part of it was based upon the alleged value of the property sued for. This negatives the plea, and shows clearly that the matter in question,—the property, its ownership and value,—was not in fact passed upon or adjudicated by the court."

In Last Chance Mining Co. v. Tyler Mining Co., 157 U. S. 683, 15 S. Ct. 733, 736, 39 L. Ed. 859, it was said: "It is said that the statutes of Idaho do not provide for findings of fact in a case like this, and that, therefore, the recitals in such findings must be ignored. If it be true that the statutes of Idaho do not authorize findings of fact, it is none the less true that such findings are a declaration by the court of the matter it determines. Even if not conclusive as against all testimony, they are certainly very persuasive evidence of what the court did in fact decide."

In Bowles v. Belt (Tex. Civ. App.) 159 S. W. 885, 889, it was said:

"Our statute prescribes that the trial judge shall, at the request of either of the parties, state in writing the conclusions of fact found

by him separately from the conclusions of law, to be filed with the clerk and to constitute a part of the record of the cause; and, in all cases where the conclusions of fact found by the judge are separately stated, the 'court shall render judgment thereon.' * * *

"If there was a recitation in this judgment distinctly finding an equivalent conclusion, which we discern from the conclusions found by the trial judge in a separate instrument, as to his declarations against the cross-action, we think it would be indisputable that the judgment in this cause would be a final one; if that be true, an analysis of this record with reference to which (the conclusions of fact of the trial judge) we are able to look to as a part of the record we think becomes just as much a part of the judgment in this cause as if there had been a specific recitation and finding contained in the judgment itself; and we believe this would be true whether you construe the finding of the trial judge one of fact or law. The judgment says, 'All matters of fact, as well as of law, were submitted to the court;' and that the court had heard the evidence, which, taken in connection with the findings of fact, thoroughly indicate that the court did dispose of the cross-action in that cause, and the pronouncement of the judgment of $702 in favor of the plaintiff against the defendant, with the costs of suit clearly to our minds, upon the record, is a declaration of the court disposing of the matter."

See, also, Short v. Blair & Hughes Co. (Tex. Civ. App.) 230 S. W. 427; Durden v. Roland (Tex. Civ. App.) 269 S. W. 274; and Campbell v. McLaughlin (Tex. Com. App.) 280 S. W. 189.

■ Trespass to try title is a statutory action. The allegations of the petition are formal and prescribed by statute. Article 7366, R. S. The plea of not guilty is of the same nature. Article 7372, R. S.

■■ Ordinarily, there is involved rival chains of title to the same land, and the question is simply as to the superiority of the respective titles. But the action is appropriate, and the one usually employed, for the settlement of purely boundary disputes. In such cases the title to the land is of course involved, and is the vital issue in the sense that the holder of the title to the senior grant has title superior to that of the holder of the title to the conflicting junior grant. The vital issue of title in such cases is controlled and determined by the boundary issue. Freeman v. McAninch, 87 Tex. 132, 27 S. W. 97, 47 Am. St. Rep. 79.

It is undisputably true that in every action of trespass to try title in the statutory form with the answer simply in the statutory form of "not guilty" it is utterly impossible to determine from the pleadings alone whether the issue in the case is purely one of boundary or simply the superiority of rival titles to the same grant of land. The pleadings, in such cases always leave that question wholly uncertain, and, under the authorities quoted above, other portions of the record may be examined to determine the true nature of the suit and the controlling issue in the case. For this reason and for this purpose the findings and conclusions in Monroe v. Hickox were properly considered in the present case. This involves no contradiction of the pleadings, and judgment for the findings and conclusions are in harmony therewith. It merely clears the obscurity and uncertainty indicated which necessarily inheres in the statutory action of trespass to try title.

The findings and conclusions show clearly that Monroe held the record title to surveys 103 and 104; Hickox the title to survey 34; and the controversy between them was purely a case of boundary. Schley v. L. & H. Blum, 85 Tex. 551, 22 S. W. 667; Cox v. Finks, 91 Tex. 318, 43 S. W. 1; Steward v. Coleman County, 95 Tex. 445, 67 S. W. 1016; Mansfield v. Gilbert, 99 Tex. 18, 86 S. W. 922.

■ This being the nature of the controversy in Monroe v. Hickox, the defendants contend the judgment therein is void for want of description of the land involved sufficient to identify and locate the same and settle the controversy.

Wallis v. Wofford (Tex. Civ. App.) 26 S. W. 739, was an action in trespass to try title brought by Wallis against Wofford. The opinion in that case is by Judge Williams. He said: "A general demurrer to the petition was sustained in the court below, from which this appeal is taken. The petition contained all the essential allegations of an action of trespass to try title. It also, by special allegations, showed that the controversy arose out of a disputed boundary between the land owned by plaintiff and that owned by defendant, and set up a judgment in a former action by the present defendant against the present plaintiff, in which the plaintiff therein claimed the boundary to be at one place, and the defendant therein asserted it to be at another, and in which the plaintiff therein sought to recover a strip of land, about 50 varas wide, across the tract, and in which a judgment was rendered generally for defendant. The petition in the present case alleged an entry by defendant herein on the land thus claimed by plaintiff since the former judgment was rendered. It is sought to sustain the ruling of the court below on the ground that the petition attempted to have established a boundary, and showed at the same time a judgment which had already fixed the line in dispute. The former judgment, if it could be held to have fixed any boundary, certainly placed it at

some other place than that claimed by the appellee; and the petition shows that appellee has entered upon, and ejected appellant from, the land thus adjudged to him. If it were admitted, therefore, that there was an adjudication fixing the boundary, that, of itself, if appellant's allegations are true, would furnish conclusive evidence of his right to the land adjudged to him, and of which he alleges appellee has taken possession. But, from the petition, it does not appear that any line was fixed. The judgment was simply for defendant, which means that plaintiff had not shown himself entitled to judgment for the land for which he sued. Whatever may be the effect of that judgment, it does not fix any boundary, and does not preclude appellant from asserting title to any land which, under or consistent with it, he may show himself to have. Reversed and remanded."

In Jones v. Andrews, 72 Tex. 5, 9 S. W. 170, 174, it was said:

"There is only one more question we deem it necessary to consider in this case. It is aptly presented in the following assignment of error:

" 'The verdict of the jury decides nothing. It leaves the case just where it began, with the field-notes in the Hunt patent as the only guide to the officer who may be charged with the duty of putting the plaintiffs in possession of the Hunt survey.'

"This assignment is well taken. The prime object of the whole controversy was to locate the Hunt survey; to determine what lands the field-notes include, and, where found, to be judicially established by a judgment, upon which a writ of possession could issue, informing the officer charged with its execution what particular land he is to deliver to plaintiffs. The field-notes of the survey, as contained in the patent, are given in the petition. There is a general verdict for plaintiffs describing no land, and a judgment is rendered for plaintiffs describing the land as in the petition. This brings us back to the very place we started from; no results are obtained, nothing is determined. It cannot be said that plaintiffs' recovery would embrace all the land claimed by the defendants. It was incumbent upon plaintiffs to show by reasonably satisfactory proof where their survey was located, and to furnish the jury with data by means of which it could be described. Had the petition given a description about which there could be no controversy, a general verdict would have been sufficient; then a judgment following the description in the petition would have settled the matter in dispute. The petition failing to furnish such description, the jury should have been instructed, in case they returned a verdict for plaintiffs, to identify the land by known metes and bounds, if the evidence

afforded the means of doing so. As it is, we have a judgment that cannot be intelligently enforced."

In Edwards v. Smith, 71 Tex. 156, 9 S. W. 77, 79, it was said: "There was a conflict in the evidence as to the width of the strip of land in controversy; the witnesses placing it all the way from 160 to 210 feet. The pleadings only described lot 5, which had no field-notes, and the jury found a general verdict for the plaintiffs, upon which the court rendered a judgment, describing lot 5 by metes and bounds, so as to include a strip 202 feet in width as the land in controversy. The judgment must follow the verdict. In this case the verdict did not authorize * * * a judgment for lot 5, which would leave the parties as they were before any suit was instituted."

In Converse v. Langshaw, 81 Tex. 275, 16 S. W. 1031, 1033, Judge Gaines said: "It is also claimed that the judgment for defendant for the land described in his answer is erroneous, because the description in the judgment is the same as that in the defend-flicting calls undetermined. The judgment, leaves the question growing out of the conflicting calls undertermined. The judgment, after setting out the field-notes, recites it (the land) as originally surveyed by the county surveyor, but does not give an unequivocal description of it. Since this could be ascertained only by resort to evidence outside of the record, the recital can hardly be held sufficient to aid the judgment. This is but another instance in which a suit is brought to settle a question of boundary growing out of conflicting calls in a grant in which the party claiming under such conveyance gives in his pleading precisely the same description which is found in the grant, without alleging which are the true calls, and without describing the land claimed by reference to such natural or artificial objects as will clearly identify it upon the ground. It is difficult to see that a judgment following the original description decides anything in such a case."

In Cunningham v. Settegast (Tex. Civ. App.) 24 S.W.(2d) 520, 523, it is said: "Since the court was without evidence to locate the southwest corner of the Murphy, and since the judgment fails to tie this corner to any object that an officer executing the writ of possession could identify from the recitals of the judgment, without exercising judicial functions, such officer could not execute the writ. For this reason also the judgment, in so far as it attempts to adjudicate the location upon the ground of these lots, is void."

In Government Hill Co. v. Mundy, 165 S. W. 78, 80, this court said:

"The verdict rendered in this case settled nothing, and was wholly insufficient as the basis of a judgment which would settle the

boundary issue. Jones v. Andrews, 72 Tex. 5, 9 S. W. 170; Reed v. Cavett, 1 Tex. Civ. App. 154, 20 S. W. 837; Edwards v. Smith, 71 Tex. 156, 9 S. W. 77; Merrell v. Kenney [Tex. Civ. App.] 45 S. W. 423; Bank v. Webb [60 Tex. Civ. App. 321] 128 S. W. 426; Wilhelm v. [Bauman] Baumann [63 Tex. Civ. App. 146] 133 S. W. 292; Johnson v. Gary [Tex. Civ. App.] 157 S. W. 237; Best v. Splawn [Tex. Civ. App.] 33 S. W. 1005; Bailey v. Baker [Tex. Civ. App.] 42 S. W. 124.

"It is a general one in plaintiff's favor 'for the land sued for,' and, upon reference to the plaintiff's pleadings to ascertain what was found in its favor, we find a description that refers to no known and fixed object by which the premises can be located with accuracy. The description in plaintiff's petition fixed the beginning point of the land sued for 2,003 varas southerly from the northwest corner of the Pridham survey No. 274, without naming any definite object which would identify said corner, and then followed with the call 'thence southerly 50 varas to the northwest corner of survey No. 6,' without naming any object by which such corner could be identified. The calls for the lines and corners of 7 and 8 do not aid the insufficiency in any way, and there is no definite, fixed object named in the petition by which the land sued for can be accurately and certainly located upon the ground. It is necessary only to refer to the authorities noted above to show its insufficiency. Further discussion of the subject would be without profit.

"The trial court, doubtless realizing the state of affairs, undertook to remedy the situation in its judgment, by locating the northwest corner of 6 with reference to objects upon the ground, viz., rock and mortar monument, and corner of city cemetery fence. The location of this corner was the very point in issue. It is the province of the jury to find the facts, and of the court to render judgment upon their findings. The verdict alone must constitute the basis of the judgment and the court is wholly without authority to go beyond the verdict and look to the evidence to determine what judgment to render, and it matters not how conclusive the evidence may be upon any particular issue. The verdict of the jury having failed to locate the disputed corner and line, or furnish data by which it might be made certain the court was without authority to resort to the evidence to supply the defect. Bennett v. Seabright [Tex. Civ. App.] 32 S. W. 1048; Brient v. Bruce, 5 Tex. Civ. App. 580, 24 S. W. 35; McCurdy v. Bullock, 2 Tex. Civ. App. 223, 20 S. W. 1110; Smith v. Tucker, 25 Tex. 594; Claiborne v. Tanner, 18 Tex. 69; Akin v. Jefferson, 65 Tex. 137; Curlee v. Rogan [Tex. Civ. App.] 136 S. W. 1126; Williams v. Smith [Tex. Civ. App.] 98 S. W. 916; Mays v. Lewis, 4 Tex. 38; Clendenning v. Mathews, 1 White & W. Civ. Cas. Ct. App. §§ 904, 907; Crosson v. Dwyer, 9 Tex. Civ. App. 482, 30 S. W. 929; Thompson v. Albright [Tex. App.] 14 S. W. 1020.

"For reason indicated the cause must be reversed."

See, also, Main v. Cartwright [Tex. Civ. App.] 200 S. W. 847, 849.

It is true the rulings above quoted were made in cases where the attack made upon the judgment was direct, by appeal, rather than collateral, but they clearly recognize that in a boundary suit the judgment must describe the land by reference to such natural or artificial objects as will identify it on the ground, and a description which merely follows that out of which the controversy arose is wholly insufficient. As Judge Gaines said in Converse v. Langshaw, supra: "It is difficult to see that a judgment following the original description decides anything in such a case," or, as Judge Maltbie remarked in Edwards v. Smith, supra, it "would leave the parties as they were before any suit was instituted," and as Judge Collard said in Jones v. Andrews, supra: "This brings us back to the very place we started from; no results are obtained, nothing is determined."

The situation is analogous to a judgment so unintelligible as to render it void for uncertainty, as was held in Wells v. Stonerock (Tex. Sup.) 37 S.W.(2d) 712. It seems to us that a judgment which determines nothing and leaves the parties where they started must certainly be regarded as wholly ineffective—a nullity—and subject to collateral attack.

In this connection plaintiffs assert that, since the judgment was for defendant, the defect therein to which we have referred has no application, citing Provident National Bank v. Webb, 60 Tex. Civ. App. 321, 128 S. W. 426, 428. In that case the judgment was reversed because it did not settle the matter in controversy, to wit, the boundary line between the Rainey and the Mizell surveys. But upon rehearing the judgment was affirmed, Judge Jenkins saying:

"In this case the verdict was a general verdict for the defendant, and the judgment followed the verdict in that it simply decreed that the plaintiff take nothing by his suit. It is plain that this verdict and judgment do not fix the true location of the boundary line between said surveys, and if that was the issue, as said agreement states it to be, said judgment determines nothing.

"But, upon a more careful examination of the pleadings in this case, we have concluded that the location of the boundary line between said surveys, in the sense that it was necessary that the jury should find, and the judgment should fix and define, the true location of said line so that a surveyor could

take said judgment, and from the description given therein run out said line on the ground, was not the issue in this case. We must look to the pleadings, and not to the evidence, to determine the issue; and it can make no difference what the statement of facts shows the issue to be, even though such statement be agreed to by the parties. * * *

"In a boundary suit brought in form of trespass to try title, where there is a general verdict for the plaintiff, if the plaintiff has not in his petition described the boundary so that it can be identified by objects found on the ground, a judgment following the verdict is void, for the reason that it cannot be executed without the officer attempting to execute the same assuming judicial functions and determining the location of such boundary; and such a judgment would not sustain a plea of res adjudicata in a subsequent suit between the same parties involving the same subject-matter. But here the defendant is not asking for any affirmative relief, hence no process of the court is necessary. He is in possession, and only asked to be let alone. This judgment protects him against being disturbed in his possession by the plaintiff. Plaintiff cannot complain of this. He does not claim the right to interfere with defendant's possession, except upon the theory that he is the owner of the land described in his petition. He did not, either in his petition or by a requested charge, ask that said boundary line be fixed. He claimed to be the owner of the land in controversy by reason of the fact that said land was within the boundaries of the Mizell survey. Upon this issue the jury found against him, and we think rightfully so under the evidence. Should the ownership of this land again be called in question by the parties to this suit or their privies, the judgment in this case would sustain a plea of res adjudicata."

From the first quotation it appears the latter part of the opinion making a distinction between a judgment for plaintiff and one for defendant is dictum and not controlling. In any event, we think there is no sound basis for such distinction.

In the present case, the judgment upon its face does not at all disclose the nature of the controversy. It is only by reference to the petition that it can be seen section 103 is in controversy and the description of the land ascertained. The field notes in the petition simply follow those contained in the patent, and that is insufficient to locate the corners and lines which was the issue of fact in controversy. Such location the judgment did not determine.

In Freeman v. McAninch, supra, Judge Stayton recognizes that in boundary cases the vital issue of title depends upon and is controlled by the question of boundary. So a judgment in a boundary case, which is insufficient to settle the boundary question, must be insufficient to determine the dependent issue of title. It seems this conclusion would necessarily follow.

For the reason indicated, we are of the opinion the judgment in Monroe v. Hickox is void and subject to the collateral attack here made upon it by defendants.

We do not regard this ruling or the reasoning upon which it is based as in conflict with Freeman v. McAninch, supra. In that case suit was brought to recover 134½ acres of land. The land had been involved in a previous suit, No. 1311. It was conceded the 134½ acres was a part of the land claimed in the former suit. In this connection see opinion of the Court of Civil Appeals, reported in 6 Tex. Civ. App. 644, 24 S. W. 922, 924, where the seventh finding of fact is: "The land described in the petition filed in cause No. 1,311, and in the judgment in that cause rendered, embraces and includes the land in controversy in the suit before us, and the land so in controversy in this cause is 134⅓ acres."

From the report of the case, it seems no question was raised as to the sufficiency of the description of the land in the first suit to embrace the 134½ acres, and the plaintiff recovered judgment for the tract sued for.

In the first suit there was thus a valid judgment in plaintiff's favor for a tract of land which embraced the 134½ acres. In this situation, it was sought in the second suit to avoid the binding force of that judgment by parol testimony to the effect that in the first suit the issue of title was not involved and the case was purely one of boundary. It is recognized by Judge Stayton in his opinion that the issue of title may depend on a question of boundary. Now, in cause No. 1311, the boundary question was settled, and that also settled the dependent issue of title which is the ultimate vital issue in all boundary suits. If the judgment does not settle the boundary question, it must leave the dependent issue of title unsettled. That is the situation with reference to the judgment in Monroe v. Hickox.

The decision in New York & T. L. Co. v. Votaw, 16 Tex. Civ. App. 585, 42 S. W. 138; Id., 91 Tex. 282, 42 S. W. 969; and Id. (Tex. Civ. App.) 52 S. W. 125, is analogous to Freeman v. McAninch. In the Votaw Case it seems a boundary question settled by a valid judgment was sought to be relitigated in a second suit.

In both of these cases it was sought to collaterally impeach valid judgments by a contradiction of the pleadings and judgments therein.

Shortly after rendition of the judgment in Monroe v. Hickox, the latter fenced the land so as to include it within his ranch in-

closure, thereby excluding Monroe. Thereafter Hickox used the land as a part of his upper pasture until June, 1915, when he conveyed his ranch to I. G. Yates, who at once went into possession. The deed from Hickox to Yates did not embrace section 103.

Plaintiffs assert the peremptory charge was erroneous, in that its prior possession was sufficient evidence of title to support its suit against defendants, who are mere trespassers.

If we are correct in the ruling that the judgment in Monroe v. Hickox is void, then plaintiff's own evidence shows that, at the time Hickox fenced and entered into possession of the land, Monroe was the true owner, and that he was wrongfully ejected by Hickox under whom the plaintiff claims. Under such circumstances, the doctrine invoked by plaintiff has no application, even though defendants be regarded as mere trespassers in possession. Richardson v. Houston Oil Co. (Tex. Civ. App.) 176 S. W. 628; Butler v. Borroum (Tex. Civ. App.) 218 S. W. 1115; Duncan v. Gragg (Tex. Civ. App.) 242 S. W. 491; Southwestern Settlement & Development Co. v. Village M. Co. (Tex. Civ. App.) 245 S. W. 975.

Under the ruling of the trial court excluding the judgment in Monroe v. Hickox, the defendants did not introduce evidence of the title under which they claim, but the whole record clearly indicates the defendants claimed under Monroe, and the case was evidently tried by both sides upon that theory. Under all the facts and circumstances reflected by this record, the trial court was justified in assuming that defendants were not in possession as naked trespassers under no claim of title.

Certain of the defendants did not join in the motion to strike the pleadings and judgment in Monroe v. Hickox, and, as to those defendants, it is claimed the plaintiff is entitled to judgment which should be here rendered. Some of these defendants were mere stakeholders of the proceeds of the oil taken from the land. As to those stakeholders this claim of the plaintiff is clearly without merit.

As to the other defendants, the matter likewise presents no error. The judgment in Monroe v. Hickox is void, as we view it. If this be true, it did not pass Monroe's title to 103. The evidence therefore shows no title in plaintiff, and the peremptory charge in favor of all defendants was properly given. Looney v. Linney (Tex. Civ. App.) 21 S. W. 409; Watson v. Harris, 65 Tex. 61; Shaw v. Whitfield (Tex. Civ. App.) 35 S.W.(2d) 1115.

There are a number of other questions presented by plaintiff relating to rulings upon evidence. These become unimportant and unnecessary to consider, in view of the ruling made upon the main and controlling question in the case.

Affirmed.