### HOFFMANN et al. v. CHAPMAN et al.

#### No. 4173.

Court of Civil Appeals of Texas. El Paso.

March 26, 1942.

Rehearing Denied May 7, 1942.

E. M. Critz and J. B. Dibrell, Jr., both of Coleman, and John Sayles, of Abilene, for appellants.

Burney Braly, Smith & Smith, and Phillips, Trammell, Estes, Edwards & Orn, all of Fort Worth, and Clayton L. Orn, of Houston, Harris & Harris, M. E. Sedberry, and Robert T. Neill, all of San Angelo, J. Hart Willis and Thompson, Knight, Harris, Wright & Weisberg, all of Dallas, William Panniil, of Fort Worth, M. R. Bullock, of Fort Stockton, A. M. Gee, of Findlay, Ohio, Hayes McCoy, of Bartlesville, Okl., H. J. Patterson and D. O. Dillon, both of Houston, and Milbank, Tweed & Hope, of New York City, for appellees.

SUTTON, Justice.

This is an appeal from the 112th District Court of Pecos County. The appellants here were plaintiffs below and the parties here will be designated as they were in the trial court.

This is the second appeal of this case. In the former appeal the case was styled Permian Oil Co. v. Smith, et al. The opinion of this court is reported in 47 S.W.2d 500; the original opinion of the Supreme Court in 129 Tex. 413, 73 S.W.2d 490, 111 A.L.R. 1152, and the opinion on rehearing in 107 S.W.2d 564, following which is the dissenting opinion of Chief Justice Cureton. In these reports will be found a fuller statement of the case and the historical background of the litigation. We will repeat here only such portions of it as we deem necessary to an understanding of our views.

There were numerous plaintiffs and seventy (70) named defendants. We need not repeat the names here. The suit was in trespass to try title to recover Survey 103, Block 194, T. C. Ry. Co. Original Grantee, situated in Pecos County, and containing 407 acres. It was described in the pleadings by metes and bounds. The trial was to a jury, but at the conclusion of the testimony the court instructed a verdict for the defendants for certain undivided oil, gas and mineral estates in the land sued for, from which action and judgment of the court the plaintiffs appealed. There are no questions presented on the pleadings and we omit any statement of them.

In addition to the statutory action of trespass to try title plaintiffs pleaded title under the three, five and ten year statutes of limitation and present issues under the three and ten.

On the former appeal the Supreme Court reversed the case because the trial court excluded the "take nothing judgment" in cause No. 854, Monroe v. Hickox, and remanded the case for the trial of the issue of innocent purchaser. There are other questions presented but the dominant issue tried on this second trial and presented here for determination is that issue. Plaintiffs in their brief state the issue thus:

"On this second trial, the undisputed proof shows that appellants and those persons to whom they have conveyed now own all the title ever acquired by T. F. Hickox and wife, Leona A. Hickox, to the said survey 103, if appellants have established on this trial that the appellees asserting title to oil and gas royalty under sales made by Mrs. M. A. (Monroe) Smith and husband, W. A. Smith, are not innocent purchasers, or are precluded from being innocent purchasers."

As we understand it, the defendants concede this to be the controlling issue.

On the former appeal the Supreme Court by a majority opinion held the "take nothing judgment" rendered in a boundary suit vested the title out of the plaintiff, Monroe, and in the defendant, Hickox. That judgment was rendered March 4, 1911. It was filed in the County Clerk's office for record February 24, 1928. This suit was filed June 21, 1928. The interests claimed by the defendants were acquired through the Monroes prior to the record of the judgment and while the apparent title was in the Monroes.

The first position of plaintiffs is that they acquired the apparent title of Monroe under the three and ten year statutes of limitation. We think this cannot be true. Under the judgment of the Supreme Court Hickox acquired Monroe's title. He had the title as effectively as had he held an unrecorded deed from Monroe. We regard this as the unequivocal holding of the Supreme Court in Whitaker v. Felts, 137 Tex. 578, 155 S.W.2d 604. See, also, Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S.W. 1139.

The next position of plaintiffs is, the defendants are not innocent purchasers because they had to take notice of the possession of I. G. Yates, whom they described as the implied tenant at will of T. F. Hick-

ox. This raises the question, was Yates the implied tenant of Hickox?

Hickox by deed dated June 1, 1915, conveyed to Yates twenty-six sections or surveys of land. The deed described the lands as follows:

| Abst. No. | Cert. No. | Sur. No. | Blk. No. | Original Grantee | Acres | St. pr. |
|---|---|---|---|---|---|---|
| 719 | 4515 | 51 | 1 | I & G N R R Co | 640 | |

Then followed in order each tract in the manner indicated above. Survey 103 involved in this litigation was not listed. It subsequently developed sometime during the year 1916, when Yates had his lands surveyed, that Sections 103 and 104, involved in suit No. 854, Monroe v. Hickox, were in the Yates pasture, and that certain of the lands purchased from Hickox were in the Monroe pasture. Yates took possession under the Hickox deed. We think the conclusion justified that Yates believed the lands he bought were within the inclosures delivered to him. There is nothing in the record to indicate that either Hickox or Yates knew or thought surveys 103 and 104 as such were within the inclosures as delivered and at the time they consummated their sale and purchase.

The old record in cause 854 discloses that suit was a pure boundary suit and that Hickox claimed no interest or title in sections 103 and 104, except insofar as they might conflict with his senior surveys 34 and 35. The trial court in cause 854 found as a fact Monroe owned 103 and 104. The trial judge, Judge W. C. Douglas, was an eminent, competent and careful lawyer and judge. The lawyers representing the parties were first class. The junior member of the firm representing Hickox there represents plaintiffs here. The writer will undertake to say the senior member actively participated in that trial. He was second to none. The rendition of the judgment in cause 854 was no careless act done in disregard of the findings. The failure to record the judgment was no mere oversight. The acts of commission and omission there are no reflections on those who participated in that trial, as is reflected in the divided opinion and judgment of the Supreme Court. There doubtless exists yet grave doubts in many competent minds. This case presents a very unusual situation in that it is apparent from March 4, 1911, until at least 1928, the interested parties were unconscious of the status of the ownership of Sections 103 and 104. Frankness compels us to record here our conclusion that no interested party in that law suit seriously believed Hickox acquired title to that to which he never asserted claim until the majority decision on the first appeal. The interested parties and those with responsibility were laboring under a legal anesthetic. No ownership or title in Hickox, so far as the record discloses, was ever asserted until this suit was filed June 1, 1928.

The possession of Yates was by virtue of and under his purchase from Hickox. Yates took possession under his deed. His possession was referable to his deed. Section 103 was not listed therein. His right to the use of his pasture was likewise referable to his deed. Situated as 103 was he could not use that which had been conveyed to him by the deed without using 103. The grazing of his stock on it did not constitute a trespass. He maintained his fences to secure to him the enjoyment of what he claimed under his deed. There is nothing in this record to indicate any thought or suspicion on the part of either Hickox or Yates that Section 103 was owned by Hickox or that it was within the inclosures as delivered to Yates. They were each wholly unaware of any title in Hickox to Section 103.

It is conceded by the parties here, about which there can be no question, that the relation of landlord and tenant is always created by contract, either express or implied. We take it there must be a recognition of ownership and an acceptance of possession in subordination of that ownership. That both Hickox and Yates were wholly ignorant of any ownership in Hickox is inescapable. There is no evidence of any intention on the part of either of them to create the relation. There is nothing from which the intention may be inferred. Intention is a necessary element, of course, of either an express or implied contract. The relation of landlord and tenant "can only arise where he who is in possession has, by some act or agreement, recognized the other as his lessor, or landlord, and taken upon himself the character of a tenant under him, so that he is not at liberty afterwards to dispute his title." Benjamin v. Benjamin, 5 N.Y. 383, 388. Of course, at the time Yates took possession the apparent title, as

held by the Supreme Court, was in Monroe. There is no evidence to indicate anything other than that Yates believed he had acquired by purchase the lands delivered to him. Consequently the possession of Hickox as delivered to Yates could not put Yates upon inquiry. Yates, like Hickox, being wholly ignorant of the ownership and location of Section 103, could not become the tenant of Hickox. Victory v. Stroud, 15 Tex. 373.

It follows, of course, we regard the record insufficient to make Yates the tenant of Hickox, and that we regard the defendants innocent purchasers.

Much has been said about the sufficiency of the possession of Yates under the three and ten year statutes of limitation. The property was devoted to the uses of which it was susceptible and there is no doubt or question as to the sufficiency of the possession, but that becomes immaterial in the absence of any tenancy.

■ The defendants take the position Yates acquired the title to Section 103 under his conveyance from Hickox. They have devoted much attention to this contention, as was done in the oral argument. We are not impressed with this proposition, for the reasons stated in connection with our discussion of the claimed tenancy of Yates under Hickox. They predicate this position on the holding and doctrine laid down in Sun Oil Co. v. Bennett, 125 Tex. 540, 541, 84 S.W.2d 447; Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442, and other cases to the same effect. There is no doubt about the rule there announced. In those cases, and others, similar to them, there is no doubt about the ownership of the property and the claim of the owner to it. The intention of the parties to include the property is unmistakably clear. Such is not the case here. On the other hand, it is clear Hickox was wholly unaware of his ownership of 103, and there is a total absence of any intention to include it. Defendants rely primarily upon the provisions of the contract dated June 22, 1915, following up the deed. In that contract the recitation is made that Hickox has sold his ranch to Yates situated in Pecos County, "consisting of twenty-six sections of land of 640 acres each." The lands are then described by section numbers, Block number and grantee, and concludes:

"have Bargained, Sold, Transferred and Conveyed unto the said I. G. Yates of the County of Upton and State of Texas, all leaseholds upon lands situated within the enclosure of said ranch, and particularly the lease upon the Runnels County school land, together with all fences, windmills, house and improvements of every kind and character, including all ranch and windmill tools, tanks, reservoirs and everything situated upon and used in connection with said ranch and farms thereon, it being my intention to transfer to said Yates said ranch complete."

The emphasis is placed by the defendants upon the concluding portion quoted and especially the concluding words, "it being my intention to transfer to said Yates said ranch complete." "Said ranch complete" is construed by them to include Section 103. We do not so construe that contract. We think the apparent purpose was to make plain that Hickox had sold with the lands all the improvements, tools, tanks, reservoirs, and everything situated thereon and used in connection with the ranch and farms, to the end that there might not thereafter arise any question about what went with the lands. The "roasting ear incident" referred to in the oral arguments helps to demonstrate further the purpose of this contract. Hickox had planted his roasting ear corn probably in March. In June when he sold it was well advanced toward roasting ears. When they came on he requested to share them. Yates replied he would get nothing from that ranch. There is nothing to indicate to us that it was intended to cover any additional lands owned by Hickox. There can be no serious doubt that Sections 103 and 104 would have been listed in the deed had either Hickox or Yates been aware of the title in Hickox. It is not reasonable to suppose both parties would have omitted by inadvertence or oversight in so important a matter as a ranch sale two full surveys out of a total of twenty-eight. This record leads us to believe the original contract between Hickox and Yates for the sale of the ranch was oral. The contract of June 22, 1915, was to confirm an apparent agreement that certain ranch and farm tools, equipment and removable fixtures were to go with the ranch. It had no reference to the lands themselves and to our minds evidences no intention whatsoever to include lands owned by Hickox and not described. A few acres might be overlooked, but we cannot from this record conclude these two surveys were lost sight of.

We overrule the proposition of plaintiffs that the omission of Section 103 from the John Monroe Estate inventory constitutes constructive notice of non-ownership, because the Supreme Court expressly held it did not. 129 Tex. at pages 444, 445, 73 S.W.2d at pages 504, 505, 111 A.L.R. 1152, paragraph 17.

We likewise overrule the seventh proposition to the effect that the will of John Monroe is a mere quitclaim and precludes the defendants as innocent purchasers. This matter was before the Supreme Court and in both opinions it was held there was no evidence that the defendants were not innocent purchasers, and, as observed in the beginning of this opinion, that was the issue to be tried on the remand of the case.

The eighth and ninth points complain the court erred in failing to submit to the jury plaintiffs' title by limitation. What we have said heretofore on the issue of limitation disposes of these points.

██ The plaintiffs complain the trial court erred in failing to submit the issue of bona fide purchaser vel non. This rests, as we understand it, on the proposition Section 103 was omitted from the inventory of the John Monroe estate and the testimony of Mr. L. B. Harris that he examined abstracts wherein the inventory was contained and that so far as he knew and believes it was disclosed 103 was not included. Reference is made to the original opinion, 73 S.W.2d at page 505, paragraph 18, wherein the court said it would be permissible to show the defendants had actual notice of the omission of 103 as a circumstance to be properly considered by the jury in passing upon the question as to whether Monroe in fact owned the land at the time of his death. As we understand the effect of the opinion is that that circumstance is not proof of the fact nor sufficient standing alone to put them upon inquiry. The circumstance might be a contribution to other evidence and proof, or corroborative. A circumstance has been sometimes called a link in a chain of circumstances leading to the conclusion sought to be established, but probably more accurately described as a strand in the rope or a wire in the cable, which alone is insufficient to support the fact. In other words, proof of the opportunity to commit an act is of sufficient probative force to be admissible. but insufficient standing alone to establish or prove the commission of the act. For the reasons noted and on authority of the case of Thomas v. First National Bank, 60 Tex. Civ.App. 133, 127 S.W. 844, that the omission is insufficient to put an intending purchaser upon inquiry, we overrule this contention.

Plaintiffs' eleventh to fifteenth points, inclusive, have to do with the admission and exclusion of evidence. The case was not submitted to the jury, but the verdict, as noted, was instructed. The evidence went to the asserted limitation title and the tenancy of Yates. In the view the trial court must have entertained and our disposition of those issues render wholly immaterial those considerations.

Defendants' twenty-first to twenty-fourth counter-propositions, inclusive, we regard as settled by the former decision of the Supreme Court and they are accordingly overruled. We likewise overrule defendants' cross-assignments and their propositions thereunder for the reasons the Supreme Court has heretofore in its opinions determined their contentions adversely to them; or that they become immaterial by reason of the disposition of the case on the instructed verdict and our disposition of it here.

The trial court's judgment was a proper one. We find no reversible error and the judgment is affirmed.

WALTHALL, J., not participating.